# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | | |
|---|---|---|
| Grout Doctor Global Franchise Corp., | ) | Case No.: 7:14-CV-105-BO |
| Plaintiff, | ) | |
| v. | ) | **SECOND DECLARATION OF JEANINE D. SNEYD** |
| Groutman, Inc., Doctor Plumber, LLC, & Gary Swanson, | ) | |
| Defendants. | ) | |

I, Jeanine D. Sneyd, declare and state as follows:

1. I have personal knowledge of the following facts and, if called upon to do so, I could and would testify competently thereto.

2. I am over the age of 18 and under no disability.

3. I am Vice-President and Assistant Secretary of Plaintiff Grout Doctor Global Franchise Corp. ("GDG").

4. I am familiar with GDG's accounting records.

5. I am also familiar with defendant Groutman, Inc.'s ("Groutman") non-performance under the Franchise Agreement that Groutman executed in 2006 and renewed in 2014 (the "Franchise Agreements"). More specifically, I am familiar with the sums of money owed by Groutman to GDG under the Franchise Agreements.

6. Groutman failed to pay GDG the $500.00 franchise renewal fee that was owed pursuant to § 5.2 of the 2014 Franchise Agreement.

7. Groutman failed to pay GDG any monthly royalties from February 1, 2014 through February 12, 2014, when the Franchise Agreement was terminated. The minimum royalty payment due was $416.31 per month. Accordingly, the amount of unpaid royalties for that time period equals $178.42.

NPGHLT1:766462.2

8. Groutman failed to reimburse GDG for refunds GDG provided to Groutman's dissatisfied customers. In total, Groutman failed to reimburse GDG for $855.00 in customer refunds.

9. Over the course of the 2006 Franchise Agreement, Groutman had a documented history of paying monthly royalty payments. In fact, Groutman always paid, at the very least, the minimum monthly royalty payments that were due under the 2006 Franchise Agreement. In several months, Groutman paid more than the minimum monthly royalty payments.

10. Had Groutman made minimum monthly royalty payments for the remainder of February, 2014, GDG would have realized at least $237.89 in royalty payments. And had Groutman made minimum monthly royalty payments for the remaining 82 months of the 2014 Franchise Agreement, GDG would have realized at least $34,137.42 in royalty payments.

11. Due to Groutman and Swanson's conduct, GDG has concluded that it cannot refranchise in the Wilmington, North Carolina territory. Groutman's conduct has tarnished GDG's brand in the Wilmington region. Moreover, Groutman and Swanson's theft of GDG's trade secrets, their infringement and misappropriation of GDG's trademarks, and their violation of their non-competition covenants have tarnished GDG's brand beyond the Wilmington, North Carolina territory.

12. GDG's confidential operations manual, *How to Get the Gold Out of Grout*, is a document that provides detailed instructions to GDG's franchisees about how to operate a GDG franchise. It also contains detailed instructions regarding best practices for cleaning tile grout and performing other services commonly performed by GDG franchisees. GDG considers the information in this operations manual to constitute a trade secret.

13. GDG considers the individuals who downloaded GDG's trade secrets from www.amazon.com to be potential franchisees or potential purchasers of grout cleaning services.

14. By providing GDG's trade secrets to third-party purchasers, Defendants deprived GDG of certain sales – whether sales of a new franchise or sales of grout cleaning services – that would have been achieved had Defendants not misappropriated GDG's trade secrets.

15. In 2013, Groutman charged an average of $368.26 for standard grout cleaning services.

NPCHL_T1:766462.2

16. In 2013, GDG franchisees charged an average of $437.96 for standard grout cleaning services.

17. In 2014, GDG franchisees charged an average of $476.66 for standard grout cleaning services.

18. Defendants informed GDG that over 545 individuals purchased GDG's trade secrets on www.amazon.com.

19. In 2013, GDG franchisees converted 40% of their leads into grout cleaning jobs.

20. In 2014, GDG franchisees converted 37.1% of their leads into grout cleaning jobs.

21. Using the most conservative numbers, had GDG franchisees sold grout cleaning services to 37.1% of the 545 individuals who instead purchased GDG's trade secrets on www.amazon.com, and had those purchasers paid $368.26 for those services, GDG's franchisees would have earned $74,460.33 through these sales.

22. From those sales, GDG would be entitled to a 9% royalty. Accordingly, GDG's damages from Groutman's public sale of its trade secrets equal $6,701.43.

23. The document attached as <u>Exhibit 2</u> to GDG's Motion for Default Judgment and Permanent Injunction is a true and accurate copy of the Franchise Agreement, which was entered into on January 3, 2014 between GDG, on the one hand, and Groutman and Swanson, on the other hand.

24. GDG has expended considerable financial resources developing the methods, techniques, processes, and other data comprising the Grout Doctor® System set forth in its manuals.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed February 27, 2015, at Woodstock, Georgia.

By: *Jeanine D. Sneyd*
Jeanine D. Sneyd